IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ANGEL NOEL GUEVARA, *et al*.

Defendants.

No. CR 08-0730 WHA

**ORDER EXCLUDING PROPOSED EXPERT DR. DEBORAH DAVIS**

## INTRODUCTION

Traditionally, eyewitness identifications are challenged through cross-examination and the presentation of fact witnesses who can draw into question the accuracy of the identification. The assistance of a forensic expert is not usually needed, as jurors can understand the issues in play on their own. After full consideration of the parties' submissions, oral argument, the evidentiary hearing, supplemental proffers, and the trial testimony of the actual eyewitnesses and the investigating officers, this order finds Dr. Deborah Davis' proposed testimony, even as revised, should clearly be excluded under Rule 403. The proposed testimony has minimal probative value at best and would waste time and confuse the issues.

## STATEMENT

In this RICO/VICAR prosecution, defendant Angel Noel Guevara is accused of the stabbing of three individuals on December 26, 2007. For these stabbings, defendant Guevara has been charged with three counts of assault with a dangerous weapon and three counts of

attempted murder in aid of racketeering. All three victims identified defendant Guevara in photographic line-ups. A fourth individual — a witness to two of the stabbings — did not identify defendant Guevara but stated that his picture "resembled" one of the attackers. To challenge the accuracy of these identifications/statements, defendant Guevara seeks to introduce the testimony of Dr. Deborah Davis, a "witness memory expert" and professor of psychology at the University of Nevada.

The original FRCrP 16(b)(1)(C) notice for Dr. Davis specified she would opine on factors that may compromise the accuracy of a witness' perception at "each of three stages of memory" (during an event, after the event but before it is recounted to others, and when the event is recounted to others) (Dkt. No. 3249). The government moved to exclude the testimony, arguing her proposed testimony was unscientific, irrelevant, invaded the province of the jury, and unreliable (Dkt. No. 3371). The motion also protested that the government had not been provided with a sufficient summary of her opinions.

Oral argument on the motion was first heard on the second day of the final pretrial conference (Dkt. No. 3569). There, the Court explained that it was inclined to wait for the eyewitnesses to testify before making a particularized Rule 403 determination regarding whether there was a need for Dr. Davis' testimony (Dkt. No. 3569 at 98–99, 105). To assist with this determination and to address the government's *Daubert* challenge, an evidentiary hearing was held during the four-week interim between the commencement of jury selection and opening statements (Dkt. No. 3522).[1]

After the evidentiary hearing, both sides were given a further opportunity to submit supplemental, post-hearing proffers and briefing without page restrictions (Dkt. No. 3741). Defendant Guevara submitted a 17-page supplemental proffer, to which the government objected (Dkt. Nos. 3796, 3851). After consideration of the testimony at the evidentiary hearing, the post-evidentiary hearing supplemental proffers, and all previously submitted material and oral argument, the undersigned decided to reserve judgment regarding what

---

[1] Dr. Scott Fraser — an eyewitness memory expert proposed by another defendant — was also examined at the evidentiary hearing. Dr. Fraser's proposed testimony was excluded after the hearing (Dkt. Nos. 3863, 4065).

2

aspects, if any, of Dr. Davis' proposed testimony would be allowed (Dkt. No. 3863). Counsel was informed that the decision would be a "traditional Rule 403 determination" made after the eyewitnesses testified, when the record was better developed with respect to the usefulness of Dr. Davis' proposed testimony.

After the government presented testimony from the eyewitnesses and the investigating officers, the Court requested a further offer of proof from Dr. Davis "*limited* to issues raised by the testimony of SFPD Inspector Scott Lau that the photographic line-ups used in connection with the stabbings on December 26, 2007, were 'as fair as possible'" (Dkt. No. 4066). Counsel and Dr. Davis were warned that the critique "should not extend to general weaknesses in eyewitness identification and memory or anything other than photographic lineups." In response to the request, counsel filed a 43-page, single-spaced submission from Dr. Davis, accompanied by two large binders of over 1,000 pages of exhibits (Dkt. No. 4211). *The voluminous submission extended well beyond the parameters of the request.* Both sides filed briefs (Dkt. Nos. 4281, 4326). Finally, on June 10, the Court heard more oral argument on the admissibility of Dr. Davis' proposed testimony. Defense counsel then asserted that Dr. Davis could assist the jury by opining on the discrete issues of: (1) the importance of selecting fillers for photographic line-ups who generally fit the witness' description of the perpetrator; and (2) the importance of a consistent appearance between the suspect and the fillers in a photographic line-up (Tr. 9619, 9621–22).

**ANALYSIS**

The probative value of Dr. Davis' proposed voluminous testimony, even as revised, is far outweighed by the time it would consume and the risk of juror confusion. As our court of appeals has explained, eyewitness identification expert testimony may be excluded when it will not materially assist the jury more than the traditional methods of challenging eyewitness identification (*e.g.* cross-examination). *See United States v. Hicks*, 103 F.3d 837, 847 (9th Cir. 1996), *overruled on other grounds*; *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994). Although there are aspects of the field of human perception and memory that are based on genuine science and opinions regarding eyewitness identification may be worthwhile

3

in some instances, it will not be worthwhile here. The most recent proffer by Dr. Davis — in disregard of the Court's request for a narrowly tailored submission regarding photographic line-ups — was not only voluminous but published a small treatise on argumentative concepts far outside the scope of what was invited. For example, a substantial portion of the proffer was devoted to a discussion of general causes of identification errors — such as guessing, source memory confusion, and post-event interference with the original memory. Beyond the fact that the order specifically disinvited a proffer based on such generalities, these generalized concepts would not offer any probative value to the photographic line-ups at issue. There has been no indication that the eyewitnesses or their identifications were plagued by these infirmities. Allowing Dr. Davis to testify in this regard would be no more than argument shrouded as expert testimony.

Most recently, defense counsel has argued that Dr. Davis' testimony will assist the jury by explaining that photographic line-ups may be suggestive when: (1) the suspect contains a unique feature that the fillers do not; and (2) the fillers do not generally fit the witness' description of the perpetrator. The jury does not need a forensic expert, however, to explain these basic concepts. For example, defense counsel already made the point to the jury that the administered lineups were unduly suggestive because not all of the fillers had facial scars. An ordinary layperson can easily understand that if an eyewitness believed the perpetrator had a facial scar, a photographic line-up would be suggestive if only one individual in the photographic line-up had a visible facial scar.[2]

After due consideration of the eyewitness' actual testimony and all other particulars of our ongoing trial, this order finds that the time and confusion involved would outweigh the little probative value possibly lurking somewhere in the proffer. In opening argument and cross-examination of the eyewitnesses and examining officers, counsel has already explored the possible shortcomings and weaknesses of the eyewitness identifications at issue.

---

[2] Defendant Guevara appears to have a small facial scar or blemish on his left cheek in the photographic line-ups given to the eyewitnesses.

4

While it is true that Inspector Lau testified that the SFPD "*wants* to be as fair as possible" and tries to present "as fair a photo spread as [the SFPD] can," forensic testimony is not needed to meet or rebut Inspector Lau's lay testimony (Tr. 3187, 3208). In fact, cross-examination of Inspector Lau has already elicited testimony addressing many of the points that Dr. Davis proposed to make regarding the ideal presentation of photographic line-ups (Tr. 3357–89). By way of example, Inspector Lau has already conceded that a line-up would be suggestive if it included only one individual with a unique feature (Tr. 3361). Inspector Lau was also vigorously cross-examined regarding the actual photographic line-ups at play and through this cross-examination, counsel elicited probative testimony going to the heart of the matter. Further generalized testimony by Dr. Davis would add little.

## CONCLUSION

For the reasons stated herein, the proposed testimony of Dr. Davis is excluded in its entirety. The jury will be given a modified version of Model Criminal Jury Instruction 4.11. This will provide the jury with ample guidance regarding factors it may consider in assessing how much weight to give the eyewitness identifications at issue.

**IT IS SO ORDERED.**

Dated: June 17, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE